Council, if you want to save time for rebuttal, please watch the clock. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Stanley Penikowski for the appellant, Tracy Anderson Mind And Body, LLC. The District Court's summary judgment should be reversed because the District Court failed to analyze the copyrighted works and failed to apply the correct legal standards. The complaint alleges infringement of the choreographic expression contained in the 19 copyrighted T.A. works, but the District Court instead analyzed the underlying method, the T.A. method. Can I ask, did you invite that, because if I look at your opposition to the motion to dismiss, the title is the T.A. method choreography is protectable, and then it says, I'm going to just quote, plaintiffs allege that the T.A. method expressed in the T.A. works contains choreography. Plaintiffs allege that the T.A. method is a choreography made up of custom and specific movement sequences and routines. So it seems like in the District Court you were arguing that it was the method that was protectable and was what was the subject of the copyright protection. Your Honor, TAM did not invite that error for several reasons. First, even looking at those statements in the opposition to the motion to dismiss, the focus is still on the choreography, and there are other statements in that opposition that we quote in our reply brief where there is also discussion of the T.A. works, which are unmistakably the focus of the copyright allegations in the complaint. In that whole section, I actually don't even see any reference to the works. It's all, I mean, the concluding sentences are, these allegations, which must be treated as true, plausibly establish that the T.A. method contains protectable choreographic works under the Copyright Act. In that whole section, it really seems to be focusing on the T.A. method. Your Honor, at 1 S.E.R. 252, lines 21 to 24, TAM's opposition says defendants' videos infringed TAM's copyrights by copying the choreography movements, sequences, and routines depicted in the T.A. works, organizational structure and format of the T.A. works, and aesthetic elements depicted in the T.A. works. And Your Honor, to the- Can I have a- I'm sorry to interrupt you, but since we're talking about the choreography in particular, I do have a question for you. How is the choreographic expression that is depicted on the DVDs meaningfully different from the choreography that makes up the T.A. method? That's where I'm stuck. I don't really understand how they're meaningfully different. Your Honor, the T.A. method is a choreography protocol that consists of a wide range of movements, sequences, and routines, and Ms. Anderson's method for combining those in various ways. And we see that in the complaint at 2 E.R. pages 255 and 259. And it's also, Your Honor, undisputed in this case. At 1 S.E.R. 34, it was undisputed between the parties that the T.A. method is a choreography protocol as defined in the complaint. And that is very similar, Your Honor, to how ballet is a method and consists of a wide range of movements and principles and ideas for combining those. And then from the ballet method, choreographers will produce specific works, like the Nutcracker or Swan Lake. In the same way, Ms. Anderson uses the T.A. method, her choreography protocol, to produce specific expressive works, like the 19 T.A. works that are asserted in this case. And that is why, Your Honor, this case is like Hanagami and not Bikram's Yoga. The first sentence of this Court's opinion in Hanagami is that dance is one of the oldest forms of human expression. The T.A. works unquestionably— But would you— Yes, Your Honor. Okay. I've watched the videos. To say they're Swan Lake and Nutcracker, that's a very generous statement, right? Because there's no storytelling, there's no theme, they're not by skilled performers, it's not before an audience, it's to be done at home for fitness. It specifically says these are, you know, butt lifting, ab toning, they're fitness benefits, they're not artistic or expressive purposes. And then Tracy Anderson describes them herself as, you know, welcome to my dance aerobic videos. So can you explain why it's more like the Nutcracker and Swan Lake if it doesn't meet those criteria? Yes, Your Honor. First, it is dance, and that is right out of the gate a major distinction between this case and Bikram's Yoga, because Hanagami recognizes that dance is expression. So the proper question then in this case, which the district court did not ask or answer, is where on the continuum that Hanagami described between uncopyrightable dance and copyrightable choreography does this fall? And it does not need to have the same degree of artistic content or historical pedigree as the Nutcracker or Swan Lake. But we do see in the record, Your Honor, at 2ER, pages 106 to 118, the declaration of Maria Koenig that explains Ms. Anderson's method of selecting, arranging, and combining these different dance moves and sequences from classical ballet, hip hop, and jazz. And from pages 107 to 118, Ms. Koenig painstakingly sets forth many different specific movements and positions and sequences from those disciplines that are then combined. And they're also set to music, Your Honor, which is... Do you think the TA method is copyrightable? No, Your Honor. We do not argue that the TA... But that is what you argued to the district court, though. You said that was protectable. But tell me why you think the method is not protectable. So Your Honor, the method is not protectable because that itself is the underlying system on which the TA works are based. Again, in the same way there's the ballet example, there's also the example of music, that jazz music is based on a certain set of notes, chords, rhythms, principles for combining them. And no one would assert that either ballet or jazz is itself copyrightable, just like the TA method. So would you say the method is more like the sequence in Bikram? It's like the sequence of the 26 yoga poses and the two breathing exercises? No, Your Honor. There is some analogy there. But the better analogy to Bikram's yoga would be that the Tracy Anderson method is like yoga because Bikram's yoga sequence was one specific sequence of 26 static poses and two breathing exercises that had to be performed strictly in that order. Here, you can have many expressive works based on the TA method. And we have 19 of them asserted in this case. And, Your Honor, if I may return to the judicial estoppel issue, even the references to the TA method refer to the TA method choreography in the opposition to the motion to dismiss. And when you look at the district court's ruling on the motion to dismiss at 1 ER 232 to 236, there's no indication there that the district court relied in any way on even precise statements that refer to the TA method. And therefore, an essential element of judicial estoppel under the Supreme Court's decision in New Hampshire versus Maine is missing there as well. Yes, Your Honor. If you can go back to the difference between the TA method and TA works, I know you've described in a somewhat more abstract way, which I know you're trying to explain the concept, but in a more concrete way, can you tell me the difference? I mean, what's the difference between the two? Is it TA works? Is it the addition of music? Is it how things are sequenced? What's the difference between the two? Yes, Your Honor. The difference is the TA work will reflect a particular selection, arrangement, and composition of movements and sequences that are among many that can be used as part of the underlying protocol that is the TA method. It is as if Ms. Anderson has a menu of many different movements, sequences, routines drawn from different disciplines, and then Ms. Anderson has her ideas for how best to select and arrange and combine those in a compositional way, thus meeting another factor the court identified in Hanegami for choreography. And Ms. Kelling described this process in her declaration at pages 106 and 107 of the excerpts of record. So the method itself can be analogized in some ways to a cookbook. The system of ballet, a system of music, like jazz would be the best analogy because we're in the artistic realm here. And then Ms. Anderson will use those principles and those raw materials to create specific, expressive works. And those works cannot be reduced either to the ideas underlying the method or to the individual components of those sequences any more than, as this Court said in Hanegami, you could reduce music to just notes. If you would agree that Compendium says that exercise routines and aerobic dances can't be protected because they're non-expressive physical movements? Yes, Your Honor. So how are the videos different than aerobic dances? Which she describes them, these are my aerobic dance videos, or exercise routines. So, Your Honor. How do we distinguish aerobic dance exercise routine from these videos? So, Your Honor, I think that there's an important distinction here between aerobic dances and exercise routines. So under the Compendium 805.4d, even though the Compendium says that exercises themselves are not copyrightable, you can have a choreographic work that nonetheless incorporates even athletic exercises or social dances or short routines. And when you look at the TA works, both the videos that were lodged as well as the undisputed descriptions in Ms. Koenig's declaration, what you see, Your Honor, is that there is a rhythmic movement in a defined space. There is compositional arrangement in terms of the flow and transition between these different movements. They are set to music, which is yet another hallmark of choreography in Hanagami. Even though these choreographed routines are designed to be performed by clients and consumers in studios or at home, at page 118 of the excerpts of record, Ms. Koenig explains that Ms. Anderson... Separate from the declarations, let's look at how she actually sells her program. She says, With this program, your results will never plateau or fail you like any fitness programs you may have tried in the past. It's going to further strengthen your mind and body connection, torch calories. I mean, it's all about tone, strengthen, engage every muscle. This is a workout for all skill levels. I mean, even the way she describes it is... You know, she says this is a transform your body by doing the same workouts that are created for clients in the studios. You have a body you never believed you could have. It all seems to be more focused on exercise, weight loss, strong, lean muscles. It just doesn't seem that it's for the expressive or artistic. Your Honor, none of those items that you just mentioned are relevant to whether the choreographed routines in the TA works are copyrightable. That relates to perhaps the intent for which the routines are to be used and some of the purposes behind them. But we know from the Supreme Court's decision in Star Athletica and throughout the compendium and portions that we cited in our briefing that... But the compendium says you look at whether it's for a presentation before an audience, whether it's to be executed by skilled performers, whether there is dramatic content. I mean, these requirements are all from the compendium. And Your Honor... I think you're arguing intent doesn't matter, but it seems to be intention with the compendium. The compendium is saying, no, the fact that it's for an audience by skilled dancers has a theme that it does matter. Your Honor, intent does not matter under the Supreme Court's decision in Star Athletica. Those factors from the compendium that this Court identified in Hanegami, I do see where some of them tend to ask for some light to be shed on the creative process here. And to the extent that that is relevant, we have deposition testimony from Ms. Anderson, for example, at 2 ER pages 32 to 36 describing that creative process. But those factors from Hanegami do not take us into a full-blown intent inquiry. Because if intent... But isn't there an intent inquiry in Bikram? Because Bikram looks at, you know, are you trying to achieve increased consciousness? You know, what is the reason for the sequences? You know, it seems like Bikram did consider intent. Is it designed to improve your health and achieve increased consciousness? So we would have to depart from Bikram if we were to say, no, you don't look at all at what were the goals of this dance.  So, Your Honor, I have three points in response to that. First, you are correct that there are statements in Bikram's yoga that do appear to look beyond the copyrighted work itself. However, second, Your Honor, this Court in Bikram's yoga did that in an effort to make what it called the difficult distinction between ideas and expression and apply it here. So even if under Bikram's you can look at intent to determine whether something is idea or expression, we don't have that problem here. Because there's no question that the TA works are expression. And as this Court said in Hanegami, dance is one of the oldest forms of human expression. So we're not asking the question the Court asked in Bikram's yoga about whether it's merely an idea. That's the TA method. That is not asserted here. We have expression in the TA works. And the question is the one that the Court in Hanegami asked. Where does this fall on the continuum between dance and choreography? And third, Your Honor, the Supreme Court's holding in Star Athletica about the irrelevance of design methods and purposes and marketability does cast some doubt on the methods of analysis used in Bikram's yoga. But the Court need not reach that here because we're not dealing with the idea-expression dichotomy. We're only dealing with expression. Thank you. I think you're over time, but we'll give you an extra minute. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Nathaniel Bach of Manat Phelps for Defendants' Appellees. The TA works are fitness DVDs, and the exercise routines thereon are not copyrightable under Section 102B and this Court's opinion in Bikram, this Court should affirm. At every turn, this Court's opinion in Bikram forecloses plaintiffs' effort to claim copyright protection over exercise movements by calling them choreography. It seems like the District Court made some errors here. I don't see really any presumption of validity, weight, or consideration. Thank you, Your Honor. With respect to the presumption of validity, both parties agree that that presumption is easily rebutted and can be done so. The presumption, first of all, doesn't apply to any non-copyrightable elements within a copyrighted work in the first place. So the presumption only goes so far. Here, because the exercises are not copyrightable in the first instance, there is no presumption that applies to those non-copyrightable elements, even if... But they were registered, so they should come with a presumption of validity based on the registration. And it looks like the District Court only looked at presumption of ownership. Well, the presumption... So, separate from, you know, whether you think that presumption can be overcome. Do you agree that it looks like the District Court didn't actually analyze? Presumption of validity. I don't agree with that, Your Honor. Where in the opinion did that take place? Well, the District Court recognizes the registration of the copyrights. There's no dispute as to that. But then, as we argued, goes to the question of Bikram. This court's opinion there, finding that that can be overcome by showing, looking to the design of the exercises at issue, the movements at issue. And therefore, those are non-copyrightable ideas, methods, and processes. And therefore, that's an easily overcome presumption in those instances. Whether or not the District Court recited chapter and verse, there's a presumption of validity. The District Court, well within its discretion and properly, looked at the record, the evidence that the defendants submitted in connection with the record to find that the presumption would be overcome in any event. The plaintiff admits that its copyright claim is only based on movements contained in the TA works. There's no allegation that there's piracy of the DVDs involved, no allegation that there's copying of costumes, of scenery, or of any other elements. Isn't there some reference to music, though? Well, there's no allegation that the music was copied, Your Honor. The, I believe that the question of music comes up in connection with this understanding of whether or not the movements could be considered choreography under the Copyright Office's various factors for assessing choreography. But in this particular instance, music is not alleged to be part of any copying that occurred. And at Dextract of Record 270, that's paragraph 51 of the complaint, the plaintiffs make clear what they are alleging was copied. It's, quote, defendants' videos copy the choreography, movements, sequences, and routines from the TA works. Nothing more. What about this two-part test? It seems, if showing that dance is protectable choreography is one way to show that the work is copyrightable expression, then it can't be correct that you have this two-part test, where you have to establish that the work is copyrightable expression before you address whether the dance rises to the level of protectable copyright. Don't those two kind of collapse on itself? And so it seems like not the right test that was used here. Well, several things, Your Honor. First of all, I don't believe that the district court applied any sort of two-part test. They referenced a sets up a two-part inquiry, and that is true, right? Bikram, this court's opinion, says you don't pass section 112B. What's the difference between an inquiry and a test? It may be semantic, Your Honor, but... Yeah, so they did set up, the district court did set up a two-part test here. But in any event, whether it did or it didn't, it is an accurate statement of this court's opinions in Bikram and in Hanagami. In Bikram, the court said... How is it, if you can establish number one with number two, then I don't see how one is a threshold to two. Well, I think the concern that the district court was looking at, and it's the same concern this court had in Bikram, is that by getting to the question of whether a particular sequence, as in Bikram, of yoga is choreography, would read out entirely the section 102B question and leapfrog that inquiry as to whether or not it is simply an idea, method, or process that is non-copyrightable. If, as the plaintiff suggests, forget all of that, just look at the videos, think about, you know, could this be false somewhere on the continuum of choreography? That is precisely what this court did not permit in Bikram. Said, we're looking at the design, we're looking at the research, the method, what exactly Mr. Chowdhury was attempting to do with his yoga sequence. And for all those reasons, you don't go beyond that. We don't have to look at the individual movements, the asanas in connection with that sequence to determine that it's non-copyrightable. This court didn't have to do that. And this court didn't do that. This court didn't look, well, let me look at asanas one through five to determine whether that's copyrightable or not. The court operated at a higher level, and rightly so, to say none of this, from the outset, can be copyrightable, whether it's called a compilation or choreography. And the court really was prophetic in anticipating the very type of effort that plaintiff attempts here, stating toward the end of the opinion, page 1044. Do you think that the district court focused its analysis all on the method and not on the works? And even if the method is not copyrightable, it's possible that some of the works could be, correct? Some of the works could be, but not the movements within the works, Your Honor, not the workouts. It is undisputed that the movements that are attempting to be protected are exercise movements. That's plain from the record. Your Honor quoted a number of those facts a minute ago in the marketing materials. But if they're choreographies in the works, those would be copyrightable, correct? Again. Protectable, I should say. One cannot, even if you could colloquially call any of the movements choreography, that's from this court's opinion in Bikram, even if the sequence, and I'm quoting from this court's opinion in Bikram, even if the sequence could fit within some colloquial definitions of dance or choreography, it remains a process ineligible for copyright protection. The same is true here. There is no daylight, and the plaintiff has shown none, that would establish where there is protectable expressive choreography within what is undisputedly workout exercises. This is the TM works or method. It's a little bit in the gray area. I mean, there are certain exercises you can say is clearly exercise. You watch exercise tape, and someone's doing sit-ups, push-ups, lifting weights, right? And they can clearly say this is exercise. This is a little bit different, right? There's a little bit of dance, and then incorporate it into the exercise. Maybe it's dance as part of exercise. And once you get to that gray area, then you get into question of, you know, what Hanagami, they say, you know, our court said, the line between choreography and dance isn't necessarily clear. So is this something maybe we should remand? The district court really didn't address that, the distinction between dance and choreography. Well, several things, Your Honor. First of all, in Hanagami, that was an appeal at the pleadings on a 12b6. And so the court was simply stating at that time, we can't determine on the record as it exists now that the plaintiff there, who was a professional choreographer, did not market workout tapes or DVDs, and actually registered the workout issue in that case as a choreographic work with the copyright office. The court did not say, oh, in every circumstance on summary judgment, you have to make such an inquiry and figure out if it falls on the continuum. Again, that would leapfrog the very inquiry that this court underwent in Bikram to determine that no, there is no possibility of the movements being copyrightable expression because they are simply an idea, method, or process. And Your Honor's question about the fact that, you look at it and you think, could this be dance? Could this be, how do I figure that out? Well, again, Bikram, this court addressed that in Bikram, stating that one cannot confer protection, copyright protection on movements by labeling them choreography and fixing them in a tangible medium of expression. And it's the same with the Copyright Office's compendium. That's section 805.53B, that judge quoted earlier, that aerobic exercises cannot be copyrightable expression. And in Circular 52, which was released after the third issue of the compendium, the following year, stating that, quote, a series of aerobic exercises or a complicated routine consisting of classical ballet positions or other types of dance movements intended for use in a fitness class are not examples of the types of work that can be considered. I guess the one question I have is, this is all abstract. And just looking at the papers here, I mean, it's hard to tell. And the district court didn't really analyze this issue. So maybe the district court is in the best position to look at it. I don't even know, did your client submit any of her videos here at all? I couldn't tell. I saw some video clips about it. I couldn't tell. Some were, I think most of them at least seemed to be from your friends on the other side. But again, the question was really, and this is what we argued at the district court, and it's the same issue here on appeal. Looking simply at the plaintiff's exercises, can there be any copyrightable expression within those DVDs? And what we did was we submitted voluminous evidence of the plaintiff's own words. The marketing materials, when one goes to the website to download or order these particular DVDs, their workouts, they talk about torching calories, flattening one's stomach, achieving balance in the body and mind. Those are all quintessentially the same types of results and design that this court addressed in Bikram and found could not. There was no reason to go and dig deep into the various yoga poses to determine whether there was anything there. At a very threshold level, those are the types of statements and design and intent that cannot render those movements copyrightable. A lot of that is kind of marketing materials because that's what people want. They want to be fit. I don't know if it really addresses what the nature of those routines are. And I don't know. Well, again, I think it's, I think the Copyright Office is in, everyone agrees, and by everyone I mean this court, the Copyright Office in both the compendium and at Circular 52 all agree that dances, when they are for fitness and exercise, cannot be copyrightable expression. That could be considered choreography. What was litigated in the summary judgment motion? Just validity, right? So that would only require a review of Tracy Anderson's videos. If you had litigated infringement, then we would have need to see, I don't recall, what's the first name of your client, Roop? Her videos, right? But I didn't see infringement as part of the summary judgment. It was not a substantial similarity. Substantial similarity and infringement was not part of the summary judgment that we moved on, Your Honor. We moved on the basis of non-copyrightable, copyrightability of the plaintiff's exercises in the first instance, correct? That's correct. So the- Counsel, I would like you to address Star Athletica, please. Certainly. As you heard your friend on the other side talk about, look, intent doesn't matter. You know, it doesn't matter that she was, that Tracy Anderson was selling these as workout videos and all of that. So please address that. Thank you, Your Honor. Two things on Star Athletica. It's all of a piece with the argument that, as Your Honor says, the other side argues intent doesn't matter. Well, that's simply not true, as Judge Koh observed with respect to this court's opinion in Bikram, where the court specifically looked at the question of design of the sequence in Bikram to determine that it was not copyrightable, to determine that it was an unprotectable process, idea, and method. And Star Athletica dealt with a very different issue under the Copyright Act. Dealt with the question of assessing a separability of useful articles under Section 101, the definition as it pertains to pictorial, sculptural, and sculptural works in Section 101. That was a question about cheerleaders' uniforms and whether one could separate the designs that were on those uniforms to determine whether they had separate expressive content that could be copyrightable. And what the court did there in any event, even though it said that the purpose of those particular uniforms was not, the subjective intent was not relevant, the court did say how it's perceived does matter. So even if this court were to look simply at perception, which the court need not do because the court did that very thing in Bikram, the district court rightly found, and the evidence is undisputed, that nobody perceives, no reasonable juror could perceive the TA method or the exercises within the TA works as anything other than a workout. I see my time is up, Your Honor. Great, thank you. Your Honor, Defendants' Counsel made an incorrect assertion that unravels their position. Counsel said that it is undisputed that the movements in the TA works are exercise movements. That is not correct. In fact, the opposite is true. At one SCR 80, it shows that it is, in fact, undisputed that the TA works feature a selection and arrangement of movements that are informed by the TA method, classic dance steps that are well known to various dance modalities, such as ballet, hip hop, jazz, and modern dance. And that is the crux of this case, Your Honor, because this is not a case like Bikram's yoga, where the copyrighted book simply explained or described the underlying method, and the plaintiff tried to extend that copyright to the method. Here, we are not trying to extend the copyrights in the TA works to the TA method. Rather, we are asserting the choreographic expression in the TA works, and that is why, at a minimum, Your Honor, the case should be reversed and remanded to the district court to apply Hanegami's definition of choreography and the six instructive factors to the TA works. Thank you, Your Honors. Great. Thank you. Thank you both for the helpful argument. The case is submitted.
judges: LEE, KOH, ALBA